UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT COX,

Plaintiff,

-against-

LALIT K. LOOMBA, ESQ., and THE QUINN LAW FIRM, PLLC,

Defendants.

**OPINION AND ORDER**

25-CV-04531 (PMH)

PHILIP M. HALPERN, United States District Judge:

Robert Cox ("Plaintiff"), proceeding *pro se*, commenced this action on May 27, 2025, alleging copyright infringement under the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq.*, and breach of contract against Lalit K. Loomba, Esq. ("Loomba") and the Quinn Law Firm, PLLC (the "Firm" and together, "Defendants"). (Doc. 1, "Compl.").

Pending before the Court is Defendants' motion to dismiss the claim of copyright infringement under Federal Rule of Civil Procedure 12(b)(6). (Doc. 12; Doc. 13; Doc. 14; Doc. 15). Plaintiff opposed Defendants' motion (Doc. 21),[1] and the motion was fully briefed with the filing of Defendants' reply (Doc. 19).

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

[1] No opposition had been filed to the docket when the reply memorandum of law was filed. Because the reply referenced Plaintiff's opposition and discussed it at length, the Court directed Defendants to file a courtesy copy of Plaintiff's opposition. (Doc. 20). Defendants timely complied with the Court's order. (Doc. 21). Plaintiff thereafter filed a copy of his opposition brief as well. (Doc. 22). The Court cites to the docket entry associated with the timely filed courtesy copy of Plaintiff's opposition.

**BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from the Complaint. The Court draws all reasonable inferences in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Plaintiff, an individual residing in Dublin, Ireland, owns and operates a subscription-based website entitled Words in Edgewise. (Compl. ¶ 4). On January 6, 2025, Plaintiff published on Words in Edgewise an article titled "My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle" (the "Article"), together with an original image of a photograph of Adam Salgado combined with a screenshot from a City Council meeting video embedded therein (the "Image"). (*Id.* ¶ 7). Plaintiff registered the Article and Image (together, the "Work") with the United States Copyright Office on May 26, 2025. (*Id.* ¶ 9).

Loomba purchased a subscription to Words in Edgewise on January 6, 2025. (*Id.* ¶ 11). Defendants are attorneys for employees of the City of New Rochelle. (*Id.* ¶ 6). Loomba converted the Work into a PDF format and distributed the Work to two lawyers at the Firm and two employees of the City of New Rochelle. (*Id.* ¶ 12). Plaintiff did not consent to, authorize, permit, or allow such use. (*Id.* ¶¶ 12, 16).

This litigation followed.

**STANDARD OF REVIEW**

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)).

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

However, while "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

**<u>ANALYSIS</u>**

Defendants' motion to dismiss is directed to the first claim for relief for copyright infringement. They argue that their fair use of the Work does not constitute an infringement. (Doc. 13 at 9-16).[3]

The Copyright Act provides, in relevant part, that:

> the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

[3] Citations to the parties' filings correspond to the pagination generated by ECF.

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

As the fair use doctrine has been designated by the Supreme Court as an affirmative defense, the party asserting it bears the burden of proof. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015). Consideration of each factor is "mandatory," *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018), and courts undertake a "case-by-case analysis" with all the factors "to be explored, and the results weighted together, in light of the purposes of copyright," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994).

Although "the possibility is 'slim'" and "there is a dearth of cases granting" Rule 12(b)(6) motions based upon the fair use defense, "'it is possible to resolve the fair use inquiry on a motion to dismiss under certain circumstances.'" *Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16-CV-00724, 2018 WL 1626145, at *4 (S.D.N.Y. Mar. 30, 2018) (quoting *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015)). Defendants contend that dismissal based upon the fair use doctrine is appropriate because they reproduced the Work "solely with two attorneys within the [F]irm and with two clients, municipal employees whom Defendants were representing and advising on potential claims arising from the Article." (Doc. 19 at 5).

Defendants contend that "the allegations of Plaintiff's Complaint make clear that Defendants' use of the Article was also solely for the limited purpose of legal representation, was non-commercial in nature, and does not affect the market value for the copyrighted Article." (Doc. 13 at 10). To support the argument, Defendants annex to the Loomba Declaration a copy of the

Work and the reproduction and distribution of the Work as referenced in the Complaint, which is an e-mail transmission of the Work from Loomba to Plaintiff, the two New Rochelle municipal employees referenced in the Work, and two individuals at the Firm. (Doc. 15). Defendants argue that the Work and e-mail demonstrate the existence of a lawyer-client relationship between Defendants and the New Rochelle employees referenced in the Work, Dawn Warren and Adam Salgado. (Doc. 15). Defendants also highlight the reference in the Work to the Firm's cease and desist letter to Plaintiff concerning certain defamatory statements previously made by Plaintiff on his website. (*Id.*). With these details supplementing the allegations in the Complaint, Defendants contend "it is evident that the allegedly infringing use was in the course of the Defendants' ongoing representation of their clients." (Doc. 13 at 7, n.4).

The Court is entitled, on a Rule 12(b)(6) motion, "to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Perry v. Mary*

*Ann Liebert, Inc.*, No. 17-CV-05600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019).

The Court may properly consider on this motion the copy of the Work annexed to the Loomba Declaration as incorporated by reference, and integral to the Complaint and relied upon, as the subject of the copyright claim. The Court also may properly consider the e-mail annexed to the Loomba Declaration for the same reasons. (*See* Compl. ¶ 12). Upon review of the Work and reproduction at issue, the Court finds that the fair use doctrine applies and Defendants' use of the Work does not constitute copyright infringement.

The first statutory factor asks the Court to consider the "purpose and character" of the reproduced work, also known as the work's "secondary use." 17 U.S.C. § 107(1). "At the core of this inquiry is whether the secondary use is transformative—understood as communicating a 'further purpose or different character, altering the first with new expression, meaning or message.'" *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 460 (S.D.N.Y. 2020) (quoting *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014)), *aff'd*, 855 F. App'x 61 (2d Cir. 2021). "Thus, a transformative work is 'one that serves a new and different function from the original work and is not a substitute for it.'" *Id.* (quoting *Authors Guild, Inc.*, 755 F.3d at 96). The fair use doctrine contemplates the use of unaltered copyrighted material, "transformed in the creation of new information, new aesthetics, new insights and understandings." *Blanch v. Koons*, 467 F.3d 244, 252 (2d Cir. 2006). "[T]he more transformative the new work, the less significance of other factors, like commercialism." *Campbell*, 510 U.S. at 579.

Plaintiff argues that Defendants' use was not transformative, as they simply copied and shared the entire Work without new purpose, in a commercial context for business or advisory purposes related to the Work's subject matter. (Doc. 21 at 8). "[T]he use of unaltered copyrighted

material—also known as raw material—is not prohibited." *Brown*, 462 F. Supp. 3d at 460. And Defendants "did not exploit [Plaintiff's] copyrighted ideas or expressions, nor did [they] put the [Work] to the same intrinsic use for which [Plaintiff] obtained the copyrights and for which he could expect protection from unauthorized use." *Hollander v. Swindells-Donovan*, No. 08-CV-04045, 2010 WL 844588, at *4 (E.D.N.Y. Mar. 11, 2010), *aff'd sub nom. Hollander v. Steinberg*, 419 F. App'x 44 (2d Cir. 2011). Defendants' transmission of the Work to the two individuals referenced therein and two attorneys at the Firm to facilitate an attorney-client communication about potential claims against Plaintiff ultimately has "nothing whatsoever to do with any interest that the copyright law was designed to protect." *Id.* Plaintiff does not cite in his opposition any authority for his position that the reproduction for a transformative legal use violates the copyright law or that sharing material within the Firm and with clients in the course of legal representation is a commercial activity. For the foregoing reasons, the first factor weighs in favor of Defendants.

With respect to the second factor, the Work appears to be a political commentary that Plaintiff alleges he published on his website to subscribers, and not a "creative" work as Plaintiff urges. (Doc. 21 at 9). "'Publication' is a technical term under the Copyright Act and is defined as 'the distribution of copies . . . of a work to the public by sale or other transfer of ownership . . . .'" *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 401 (S.D.N.Y. 2002) (quoting 17 U.S.C. § 101). "As a general rule, published works enjoy less fair use protection than unpublished works, and creative works are entitled to greater protection than factual works." *Hofheinz v. Discovery Commc'ns, Inc.*, No. 00-CV-03802, 2001 WL 1111970, at *5 (S.D.N.Y. Sept. 20, 2001). Because the Work was published by Plaintiff, this factor thus likewise weighs in favor of Defendants.

The third factor addresses "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor "has favored copyright holders

where the portion used formed a significant percentage of the copyrighted work . . . or where the portion used was essentially the heart of the copyrighted work." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 738 (2d Cir. 1991). Plaintiff correctly points out, and Defendants concede, the entire Work was reproduced. (Doc. 13 at 14; Doc. 15; Doc. 21 at 9). "Even a substantial taking, however, can constitute fair use if justified." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 185 (2d Cir. 2016); *see also Authors Guild, Inc.*, 755 F.3d at 98 (acknowledging that some purposes require copying entirety of copyrighted work). Defendants here, like the defendants in *Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003),[4] used all of the copyrighted Work, "not for its expressive content, but rather for its allegedly factual content." The purpose in *Bond*, where the use was in a state-court custody proceeding, was to obtain admissions of fact to prove that the plaintiff's home was not a suitable place for the children. *Id.* The use of the Work here was to convey its factual content for purposes of client discussion and assessment of its legal implications. (*See* Doc. 15). Even if, however, the third factor were to tip in favor of Plaintiff due to the amount of the Work that was reproduced, the fourth factor weighs decisively in favor Defendants.

The fourth factor, which is "undoubtedly the single most important element of fair use," *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985), addresses "the effect of [Defendants'] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "The critical inquiry is whether the secondary use usurps the market of the original, where the infringer's target audience and the nature of the infringing content is the same as the original." *Brown*, 462 F. Supp. 3d at 463. Plaintiff alleged that Loomba distributed the Work to two lawyers at the Firm and two employees of the City of New Rochelle—the two individuals that are the subject of the Work. (Compl. ¶ 12; Doc. 15). Plaintiff speculates potential lost subscribers, arguing

---

[4] *Abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016).

that the sharing "causes quantifiable harm, including lost revenue." (Doc. 21 at 10). The inference Plaintiff suggests is that the two Firm lawyers and two City of New Rochelle employees would have each purchased an annual $70 subscription to Words in Edgewise. (*See* Compl. ¶ 14). Plaintiff does not, however, explain how the single instance of use alleged to have occurred had any impact on Plaintiff's potential market; and "given the nature of the [Work] . . . it is impossible to imagine how their use [in connection with legal representation] could affect the market for the [Work]" which Plaintiff describes as "paying subscribers seeking premium insights" and "in-depth analysis, commentary, and opinion" (Doc. 21 at 10), "or could in any way impact [the Work's] marketability." *Hollander*, 2010 WL 844588, at *4. Put simply, Defendants' use, as alleged by Plaintiff, does not "usurp the market of the original." *Brown*, 462 F. Supp. 3d at 463.

Under these circumstances, Defendants have established that the fourth factor weighs in their favor and a fair use defense. Defendants' motion to dismiss the first claim for relief for copyright infringement is therefore granted.[5]

**CONCLUSION**

Defendants' motion to dismiss the first claim for relief for copyright infringement is GRANTED.

Defendants shall answer or otherwise file a pre-motion letter addressed to the remaining claim for breach of contract by September 25, 2026.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 12).

---

[5] Given the conclusions reached herein, the Court need not and does not reach that branch of Defendants' argument for dismissal of the claim for statutory damages in the event Defendants are found to have infringed Plaintiff's copyright. (Doc. 13 at 16-17).

Dated: White Plains, New York
September 2, 2026

SO ORDERED:

_______________________________
Philip M. Halpern
United States District Judge